JOHN DOE *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Middlesex. April 4, 1996. - July 31, 1996.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Insurer's obligation to defend, Construction of policy, Unfair act or practice, Settlement of claim. *Contract,* Insurance. *Consumer Protection Act,* Insurance, Unfair or deceptive act.

An insurer had no duty to defend an insured in a civil suit arising from allegations of the insured's sexual misconduct involving a minor where the policy excluded claims for bodily injury which were either expected or intended by the insured. [369-371]

In a claim brought by an insured against an insurer for unfair settlement practices under G. L. c. 93A and G. L. c. 176D, § 3 (9), summary judgment was correctly ordered for the insurer, where the delay in the insurer's responding to the plaintiff's claim letters was not shown to be unreasonable or the result of bad faith, nor did the plaintiff demonstrate any prejudice therefrom. [371-372]

CIVIL ACTION commenced in the Superior Court Department on October 12, 1993.

The case was heard by *Catherine A. White,* J., on motions for summary judgment.

A request for interlocutory review was heard in the Appeals Court by *Elizabeth A. Porada,* J. The Supreme Judicial Court transferred the case on its own initiative.

*Michael S. Greco (Martha Born & Gail A. Goolkasian* with him) for the plaintiff.

*Mark E. Cohen (Stephen D. Rosenberg* with him) for the defendant.

LYNCH, J. This appeal raises the question whether the defendant, Liberty Mutual Insurance Company (Liberty Mutual), had a duty to defend the plaintiff in an underlying civil suit arising from allegations of sexual misconduct involving a minor. The plaintiff also alleges that Liberty Mutual is

liable under G. L. c. 93A, § 9 (1994 ed.),[1] for unfair settlement practices in the business of insurance as provided in G. L. c. 176D, § 3 (9) (1994 ed.).[2]

A Superior Court judge denied Liberty Mutual's motion for summary judgment and entered summary judgment for the plaintiff on his duty to defend claim.[3] The judge denied both parties' summary judgment motions on the plaintiff's claim under G. L. c. 93A. A single justice in the Appeals Court allowed Liberty Mutual's petition for leave to file an interlocutory appeal. G. L. c. 231, § 118, first par. (1994 ed.). We transferred the case here on our own motion and conclude that Liberty Mutual had no duty to defend the plaintiff in the underlying action and that both Liberty Mutual's motions for summary judgment should have been allowed.

The complaint in the underlying action asserted that: the plaintiff engaged in unlawful sexual contact with a minor when the minor was fourteen to fifteen years of age; he used his position as a junior high school principal to gain the trust of the minor and her family; that, while on a bicycle trip during the summer of 1974, the plaintiff fondled the minor's

---

[1]General Laws c. 93A, § 9 (1994 ed.), provides, in pertinent part:

> "(1) . . . . any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action . . . for damages and such equitable relief. . . as the court deems to be necessary and proper."

[2]General Laws c. 176D, § 3 (9) (1994 ed.), states in pertinent part:

> "Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions:
>
> "(*a*) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
>
> "(*b*) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> . . . ."

[3]The denial of Liberty Mutual's motion reads: "[T]here is a way to read complaint to set forth claims covered by the policy language."

breasts and genital area during every night of the trip; and at
the conclusion of the trip when the minor's parents gave the
plaintiff a ride home, he sat next to the minor in the back seat
of the car and held her hand covered by a jacket. The com-
plaint also alleged that the plaintiff fondled the minor's breasts
and genital area on several other trips through the late spring
of 1975 as well as general allegations of fondling during the
winter of 1974-1975. The complaint contains counts based on
negligence, negligent infliction of emotional distress, inten-
tional and reckless infliction of emotional distress, breach of
fiduciary duty, assault, battery, and a violation of the Mas-
sachusetts Civil Rights Act.

1. *Duty to defend.* In allowing the plaintiff's partial motion
for summary judgment on the issue of Liberty Mutual's duty
to defend the judge ruled that the complaint in the sexual
misconduct case set forth claims covered by the policy
language. Liberty Mutual argues that no duty to defend
existed because the complaint is based on sexual misconduct
involving a minor which is intentional as a matter of law,
even though the complaint included negligence counts.

"Summary judgment shall be granted where there is no
material fact in dispute, and the moving party is entitled to
judgment as a matter of law . . . The moving party bears the
burden of affirmatively demonstrating the absence of a triable
issue . . . Where the party moving for summary judgment
does not have the burden of proof at trial, this burden may be
met by . . . submitting affirmative evidence that negates an
essential element of the opponent's case . . . Once the mov-
ing party establishes the absence of a triable issue, the party
opposing the motion must respond and allege specific facts
establishing the existence of a material fact in order to defeat
the motion." *SCA Servs., Inc.* v. *Transportation Ins. Co.,* 419
Mass. 528, 531 (1995), and cases cited.

It is well settled in this jurisdiction that a liability insurer
owes a broad duty to defend its insured against any claims
that create a potential for indemnity. *Liberty Mut. Ins. Co.* v.
*SCA Servs., Inc.,* 412 Mass. 330, 332 (1992). The duty to
defend is broader than the duty to indemnify as an insurer
may owe a duty to defend its insured in an action in which
no damages ultimately are awarded. *Boston Symphony Or-
chestra, Inc.* v. *Commercial Union Ins. Co.,* 406 Mass. 7, 10
(1989). "[I]f the allegations of the [third-party] complaint are

'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Liberty Mutual Ins. Co.* v. *SCA Servs., Inc., supra* at 331-332, quoting *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983).

Under the policy, Liberty Mutual promised to defend any suit seeking damages on account of bodily injury caused by an "occurrence."[4] An occurrence is defined as an accident which results in bodily injury or property damage.[5] The policy excluded claims for bodily injury which were either expected or intended from the standpoint of the insured.[6]

2. *Inferred intent to injure.* As we decide whether Liberty Mutual had a duty to defend, we look only to the complaint and the policy. *Continental Casualty Co.* v. *Gilbane Bldg. Co.* 391 Mass. 143, 146 (1984). Although an adult who engages in unlawful sexual behavior toward a minor may not subjectively intend to harm the child, we have held, consistent with the overwhelming majority of other courts, that intent to injure is inferred as a matter of law in such cases. *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 408 Mass. 393, 402-403 (1990). See *State Farm Fire and Casualty Co.* v. *Davis*, 612 So. 2d 458 (Ala. 1993) (collected cases following this rule); *State Farm Fire & Casualty Co.* v. *Watters*, 268 Ill. App. 3d 501, 507 (1994) (same). Thus, unlike a situation where an

---

[4]The policy states in relevant part:

"Personal Liability:

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this Insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

[5]According to the policy definitions: "occurrence" means "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

[6]The relevant language of the policy states: "This policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

intentional act, such as throwing an object could have the unintentional consequence of harming an individual, in sexual misconduct involving a minor, the conduct alleged is inherently harmful to the child. Cf. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 87 (1984).

Therefore, in child molestation or sexual misconduct involving a minor, both intent to harm and the harm itself is inferred. Furthermore, we conclude along with the majority of jurisdictions that have considered the issue that the inference of harm does not require forcible rape or sexual intercourse. See *Commercial Union Ins. Co.* v. *Roberts*, 815 F. Supp. 1006, 1007 (W.D. Tex. 1992) (any sexual contact with child by adult is conduct so outrageous or extreme that intent to injure can be inferred as matter of law); *Whitt* v. *Deleu*, 707 F. Supp. 1011 (W.D. Wis. 1989) (hugging, kissing, and fondling of student sufficient sexual misconduct to infer intent to cause injury and therefore no coverage under policy); *Allstate Ins. Co.* v. *Thomas*, 684 F. Supp. 1056, 1059-1060 (W.D. Okla. 1988) (hugging, kissing, or simply touching child becomes act of emotional, if not physical, violence when such touching used for sexual gratification of adult); *Western States Ins. Co.* v. *Bobo*, 268 Ill App. 3d 513, 519 (1994) (harm ensues from all forms of sexual abuse; court will not attempt to quantify resulting harm).

It is not possible for intentional sexual misconduct also to be negligent. See *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc., supra* at 410, citing *Sabatinelli* v. *Butler*, 363 Mass. 565, 567 (1973). The allegations against the plaintiff included claims that he intentionally fondled the minor and intentionally held her hand furtively under a jacket. The plaintiff argues that the jury could find that only the hand holding occurred and that such conduct could be found to be merely negligent. This argument is deficient in two respects. First, it isolates the hand holding from the context in which it occurred, thus creating a stilted, artificial reading of the complaint. The complaint alleges an incident of furtively holding a minor's hand after a weekend of blatant sexual touching. This cannot fairly be read as alleging innocent though negligent conduct. Furthermore, the act alleged involved physical contact between a minor and an adult in a position of authority conducted in inappropriate circumstances. Although the adverse consequences may not have been intended,

the act itself was still intentional. A negligence claim which is premised on the same acts which are contended to be the basis of an intentional sexual misconduct claim is not legally supportable. *Id.* There is no duty to defend in these circumstances.

3. *General Laws c. 93A, § 9.*[7] Liberty Mutual was granted leave to appeal from the denial of their motion for summary judgment on the plaintiff's claim under G. L. c. 93A, § 9. The plaintiff claims that he is entitled to recover as a matter of law. However, the plaintiff did not seek relief under G. L. c. 231, § 118, first par., from the order denying summary judgment on his c. 93A claim, and the issue is not properly before the court in this interlocutory appeal. Nevertheless, because we must decide in connection with Liberty Mutual's appeal whether the denial of its motion for summary judgment was proper, we consider the plaintiff's appeal as well. *Leavitt* v. *Mizner*, 404 Mass. 81, 83 (1989).

Because we have decided that Liberty Mutual had no duty to defend, we look to see whether the record presents a basis for recovery by the plaintiff because of Liberty Mutual's conduct independent of the denial of coverage. Liberty Mutual contends that a policy holder cannot recover under a c. 93A claim based on an insurer's delay in disclaiming coverage when the policy did not cover the loss in question relying on *Alan Corp.* v. *International Surplus Lines Ins. Co.*, 22 F.3d 339, 343 (1st Cir. 1994). The *Alan* case was decided under G. L. c. 93A, § 11. The plaintiff argues that, G. L. c. 93A, § 9, unlike G. L. c. 93A, § 11, permits a plaintiff to recover nominal damages if he fails to prove actual damages. See *Liardi* v. *Brown*, 394 Mass. 151, 160 (1985). It follows, says the plaintiff, that his claim is not deficient because of his failure to show he was injured. We conclude that the plaintiff's claim is deficient because he fails to show that Liberty Mutual acted in violation of G. L. c. 93A by engaging in unfair or deceptive insurance practices as defined by G. L. c. 176D, § 3 (9).

The plaintiff first notified Liberty Mutual of the claim in

---

[7]The parties dispute whether the plaintiff's claim is governed by G. L. c. 93A, § 9 or § 11, since the claim is based in whole or in part on an assignment by another insurance company. Since this issue cannot be decided on the summary judgment record before us, we assume that § 9, which is more favorable to the plaintiff, applies.

writing on October 20, 1992.[8] There is no dispute that Liberty Mutual did not respond to the plaintiff's claim letter dated October 20, 1992, until it received another letter from the plaintiff in April of 1993. By undisputed affidavit Liberty Mutual says the plaintiff's claim letter was lost in transit between two of its claims offices. The plaintiff's claim was ultimately denied on July 8, 1993.

Thus the plaintiff's claim is predicated on Liberty Mutual's failure to respond to only one claim letter which caused a six-month delay in the disposing of the claim. The plaintiff offers no evidence to show that he was prejudiced in any way by the fact that he was uncertain as to the viability of his claim between October of 1992 and July of 1993. There is also nothing in the record to show that any delay in responding to the plaintiff's claim was the result of bad faith or ulterior motives. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14 (1989). A determination of what constitutes unreasonable delay is ordinarily left to the fact finder. See *Travelers Ins. Co.* v. *Waltham Indus. Lab. Corp.*, 722 F. Supp. 814, 831 (D. Mass. 1988), rev'd on other grounds, 883 F.2d 1092 (1989). On this record, however, no adequate basis exists to warrant a finding of unreasonableness.

For these reasons we reverse the denial of Liberty Mutual's motion for summary judgment, vacate the order of partial summary judgment for the plaintiff, and order that judgment be entered for Liberty Mutual.

*So ordered.*

---

[8]For the purpose of this appeal the plaintiff conceded that there was no prior claim.