SCA Services, Inc. vs. Transportation Insurance
Company.

Suffolk. December 7, 1994. - February 17, 1995.

Present: Liacos, C.J., Abrams, Lynch, & O'Connor, JJ.

*Insurance*, General liability insurance, Insurer's obligation to defend, Coverage. *Hazardous Waste. Practice, Civil*, Summary judgment. *Contract*, Insurance.

In an action seeking a declaration of the plaintiff's right to a defense and to indemnification under an insurance policy, the judge correctly granted summary judgment for the insurer where there was no material fact in dispute that the losses were uninsurable because they were known by the insured prior to the purchasing of the policy. [532-534]

Civil action commenced in the Superior Court Department on June 19, 1986.

A motion for summary judgment was heard by *Herbert Abrams*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David M. Jones* (*Matthew L. Jacobs*, of the District of Columbia, with him) for the plaintiff.

*Michael F. Aylward* (*Laurie J. Condos* with him) for the defendant.

*Thomas W. Brunner, James M. Johnstone & Jennifer L. Radner*, of the District of Columbia, & *Peter G. Hermes & Kevin J. O'Connor*, for Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

Lynch, J. This action raises the question whether the defendant, Transportation Insurance Company, had a duty to defend and to indemnify SCA Services, Inc. (SCA), in an underlying class action suit arising from SCA's operation of a hazardous waste landfill in Wilsonville, Illinois. SCA al-

leged that the defendant had a duty to defend, pursuant to its comprehensive general liability coverage for bodily injury, property damage and personal injury (coverage parts A, B, and P, respectively).[1] The defendant moved for summary judgment on the ground that the claims against SCA in the underlying action were not within part P of the insurance policy and, in the alternative, even if SCA was entitled to coverage under part P, it was not covered in this case because the damages from the operation of its landfill were a "known loss" and therefore uninsurable at the time the policy was issued. The motion judge granted summary judgment for the defendant on the ground that the damages were uninsurable because they were known prior to the purchasing of the policy. SCA filed a timely notice of appeal and we transferred the case here on our own motion. We now affirm.

SCA filed this action on June 19, 1986, seeking a declaration of its right to a defense and indemnification in the Illinois action, Chappell *vs.* SCA Servs., Inc. (Ill. Cir. Ct. No. 82-L-12) (1982) (Chappell suit). SCA alleged that it was entitled to a defense pursuant to the coverage afforded in parts A and B of its policies (covering bodily injury and property damage). SCA also alleged claims under G. L. c. 93A (1992 ed.), the Consumer Protection Act, and under the common law for breach of duty of good faith and fair dealing. In May, 1991, SCA amended its complaint to allege that it was entitled to coverage pursuant to the personal injury liability portion of its policy (part P).

The complaint in the Chappell suit was filed in the Circuit Court for the Seventh Judicial Circuit, Macoupin County, Illinois, on February 2, 1982. The plaintiffs in that action were residents of the village of Wilsonville, Illinois, who claimed to have suffered personal injuries and property damages as a

---

[1]SCA has since waived its reliance on the bodily injury and property damage portions (parts A and B) of its policies. SCA's similar claims against Liberty Mutual Insurance Company have not been pursued and are therefore waived. Liberty Mutual is no longer involved in this action. The applicability of the personal injury liability portion (part P) of the defendant's policy is the only question that remains to be decided.

result of the insured's operation of a hazardous waste disposal site in Wilsonville. The insured, its subsidiary (which has since been merged into the insured), and two of its executives were the defendants in that action.

In 1977, prior to the commencement of the class action, the Wilsonville residents brought an action to enjoin the insured's operation of the site on grounds that it was hazardous and a nuisance. In 1978, following a lengthy trial, the Macoupin County Court declared that the landfill was a present and prospective public nuisance and ordered the landfill operations to cease. In 1981, the Illinois Supreme Court affirmed the lower court's judgment and ruled that the injunctive relief was proper. See *Wilsonville* v. *SCA Servs., Inc.*, 86 Ill. 2d 1 (1981).

The plaintiffs in the Chappell suit asserted that the insured was liable for trespass, nuisance, conscious disregard for public safety, and conspiracy to create and to maintain a nuisance. In support of these allegations, the plaintiffs asserted that the insured's operation of the site caused noxious odors, health hazards, great amounts of dust in the area, contamination of the local water supply, emissions of poisonous gases, and the increased risk of explosions and fires. In 1988, the insured settled the Chappell suit for approximately $2,500,000 in exchange for a release of all plaintiffs' claims for personal injury and other damages, excepting personal injury manifested for the first time after settlement and not discoverable prior to settlement. Citing its standard form pollution exclusion, the defendant declined to defend or to indemnify the insured in the Chappell suit.

After denial of the SCA's motion for summary judgment in the instant action, a judge of the Superior Court granted summary judgment to the defendant ruling that, "even if personal injury coverage extends to the type of injuries and damages alleged in the *Chappell* suit, the alleged offending conditions existed prior to the effective date of the insurance policy and, therefore, [the defendant] need not defend or indemnify SCA."

On appeal, SCA argues that coverage exists and that the claim was not a "known loss" at the inception of the policy. We conclude that SCA's liability in the underlying suit was a certainty, a "known loss," and was an uninsurable risk. Based on this reasoning the motion judge was correct in allowing summary judgment.[2]

1. *Summary judgment.* Summary judgment shall be granted where there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Cassesso* v. *Commissioner of Correction,* 390 Mass. 419, 422 (1983). See *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 553 (1976); Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. *Pederson* v. *Time, Inc.,* 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner* v. *Technical Communications Corp.,* 410 Mass. 805, 809 (1991). *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. *Pederson* v. *Time, Inc., supra* at 17.

It is also well settled "that the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they

[2]The parties raise no issue in regard to whether Illinois or Massachusetts law governs this case. In such a situation we assume that Massachusetts law governs (or that the legal principles are the same). See *Commercial Credit Corp.* v. *Stan Cross Buick, Inc.,* 343 Mass. 622, 625 (1962); *Tsacoyeanes* v. *Canadian Pac. Ry.,* 339 Mass. 726, 727-728 (1959), and cases cited.

state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983). See *Continental Casualty Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146-147 (1984); *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 12-13 (1989); *Vappi & Co.* v. *Aetna Casualty & Sur. Co.*, 348 Mass. 427, 431 (1965). We note that "the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." *Sterilite Corp.* v. *Continental Casualty Co.*, *supra* at 319, quoting *Union Mut. Fire Ins. Co.* v. *Topsham*, 441 A.2d 1012, 1015 (Me. 1982). Additionally, when the scope of coverage provided by a clause is unclear, the policy should be read so as to provide coverage to the insured. *Goshen* v. *Grange Mut. Ins. Co.*, 120 N.H. 915, 917-918 (1980). Any ambiguity in the policy will be construed against the insurer. *Vappi & Co.* v. *Aetna Casualty & Sur. Co.*, *supra* at 431.

.2. *Known loss.* The defendant's policy became effective on January 1, 1980. By its very nature insurance is based on contingent risks which may or may not occur. *Outboard Marine Corp.* v. *Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 103-104 (1992). Stated differently, the basic purpose of insurance is to protect against fortuitous events and not against known certainties. Parties wager against the occurrence or nonoccurrence of a specified event; the carrier insures against a risk, not a certainty. *Bartholomew* v. *Appalachian Ins. Co.*, 655 F.2d 27, 29 (1st Cir. 1981). It follows from this general principle that an insured cannot insure against the consequences of an event which has already begun. *Appalachian Ins. Co.* v. *Liberty Mut. Ins. Co.*, 676 F.2d 56, 63 (3d Cir. 1982). Once the risk is eliminated, the contract for insurance no longer exists. *Bartholomew* v. *Appalachian Ins. Co.*, *supra*. Courts have found that the insurable risk is eliminated in the instance where an insured knows, when it

purchases a policy, that there is a substantial probability that it will suffer or has already suffered a loss. At that point, the risk ceases to be contingent and becomes a probable or known loss. When the insured has evidence of a probable loss when it purchases the policy, the loss is uninsurable under that policy. See *Outboard Marine Corp.* v. *Liberty Mut. Ins. Co., supra.* This rule has been recognized in Massachusetts and by leading authorities on the subject of insurance. See *Bettigole* v. *American Employers Ins. Co.,* 30 Mass. App. Ct. 272, 274 (1991); Couch, Insurance §§ 1:5, 2:7 (rev. 2d ed. 1984); R. Keeton & A. Widiss, Insurance Law § 4 (1988). Courts have applied this known loss principle in environmental contamination cases. In *Gloucester* v. *Maryland Casualty Co.,* 668 F. Supp. 394, 403 (D.N.J. 1987), the United States District Court ruled that the insurer, which provided liability coverage effective July 2, 1982, was not liable for costs stemming from a landfill which had been ordered closed on October 28, 1980. The court held that the insured had actual knowledge of the environmental contamination which prompted the site closing prior to the inception of the insurance. *Id.* at 402-403. See also *New Castle County* v. *Hartford Accident & Indem. Co.,* 685 F. Supp. 1321 (D. Del. 1988) (no coverage where policy became effective after insured was notified by State that its landfill was likely cause of contamination). In a motion for summary judgment based on the principle of known loss, the court must determine whether any factual questions exist with respect to the insured's knowledge at the time it bought the policy. If the court finds that no fact questions exist in this regard, the issue is one of law for the court to decide. *Outboard Marine Corp.* v. *Liberty Mut. Ins. Co., supra* at 104. The motion judge properly took into account that SCA's Wilsonville landfill operations ceased and were declared a public nuisance in 1978. The claims in the Chappell suit are based on SCA's operations at the landfill and on nuisance.

It is apparent, therefore, that, at the time SCA's insurance policy with the defendant became effective, in January, 1980, SCA had full knowledge of the probable loss for which it

later sought a defense and indemnification and, as a result of this knowledge, the loss was uninsurable. Prior to the effective date of the policy, as a result of an action brought by the Wilsonville residents, the landfill was declared to be a nuisance, and the County Court of Macoupin ordered the site closed. SCA knew that the citizens of Wilsonville were claiming that the operation of the landfill was interfering with the use of their property. SCA argues that, prior to purchasing the policy, it only had knowledge that the landfill was a source of contamination and not that it would be held liable to third parties as a result of this contamination. See *Johnstown* v. *Bankers Standard Ins. Co.*, 877 F.2d 1146, 1151-1153 (2d Cir. 1989). However, SCA's knowledge goes beyond simply knowing that there was environmental contamination and that its landfill was the probable source of this contamination. SCA knew that the residents of Wilsonville were damaged by the operation of the site. Therefore, the nuisance for which SCA sought personal injury coverage was not only a known but an adjudicated fact at the time SCA purchased the insurance and thus was uninsurable. In light of this conclusion, the judge was correct in granting the defendant's motion for summary judgment.[3]

*Judgment affirmed.*

---

[3]Where SCA merely mentions its G. L. c. 93A claim, without argument, the issue does not warrant our discussion, and SCA is deemed to have waived the claim. *Commonwealth* v. *Klein*, 400 Mass. 309, 316 (1987). Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).